UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEWLINE HOLDINGS, LLC, | |
| Appellant, | No. 21 C 01277 |
| v. | Judge Thomas M. Durkin |
| ERIC THOMAS, | |
| Appellee. | |

**MEMORANDUM OPINION AND ORDER**

Newline Holdings, LLC appeals from an order of the Bankruptcy Court confirming the Chapter 13 Plan in the bankruptcy proceeding of Eric Thomas. The Bankruptcy Court's order is reversed and remanded for further proceedings in accordance with this order.

**Legal Standard**

"Federal district courts exercise appellate jurisdiction over 'final judgments, orders, and decrees' entered by bankruptcy judges." *Lardas v. Grcic*, 847 F.3d 561, 567 n.2 (7th Cir. 2017). District courts review the bankruptcy court's legal conclusions de novo and factual findings for clear error." *In re Colone*, 2020 WL 1233775, at *2 (N.D. Ill. Mar. 12, 2020) (citing *In re Chicago Mgmt. Consulting Grp., Inc.*, 929 F.3d 803, 809 (7th Cir. 2019)). A bankruptcy court's discovery decisions "are reviewed for an abuse of discretion." *USA Gymnastics v. Liberty Ins. Underwriters, Inc.*, 27 F.4th 499 (7th Cir. 2022).

**Background**

I.  **Illinois Property Tax Purchasing System**

Newline Holdings is a real estate tax lien purchaser. The Illinois Property Tax Code establishes the framework for this line of business. *See* 35 ILCS 200/21-75 *et seq.*; *In re LaMont*, 740 F.3d 397, 400-401 (7th Cir. 2014). Under the tax code, a lien in favor of the county for accrued taxes automatically arises on all real property each year. If the taxes are paid, the lien is extinguished. If they go unpaid, the county may foreclose on its tax lien or, more commonly, conduct a "tax sale." A tax purchaser such as Newline may purchase the "property" at such a sale, though it does not immediately receive full title to the property. Instead, the tax purchaser pays the taxes due on the property, the county loses its lien, and the tax purchaser receives a "Certificate of Purchase." *LaMont*, 740 F.3d at 400.

Once the tax sale is completed, the taxpayer has two years to redeem the property (longer if it is a home or if the tax purchaser agrees to an extension) by "paying the tax purchaser, through the county clerk, all amounts due," including the taxes and any penalty interest. *LaMont*, 740 F.3d at 400-01; *see* 35 ILCS 200/21-355. The mechanism for this payment is perplexing—the statute dictates that a redemption payment must be made to the county but then seems to say nothing about how the tax purchaser goes about collecting the money it is owed. *See In re Woodruff*, 600 B.R. 616, 630 n.7 (Bankr. N.D. Ill. 2019) (observing that "the Illinois statutes with respect to this are hopelessly muddled"). But the end result is that the back taxes paid to the county by the property owner will make their way into the pockets of the tax purchaser, at which point the tax lien is extinguished. *Id.* During this

redemption period, the "property subject to a Certificate of Purchase still belongs to the delinquent taxpayer, legally and equitably." *LaMont*, 740 F.3d at 406 (citing *In re Smith*, 614 F.3d 654, 658-59 (7th Cir. 2010)).

Assuming the property owner has not yet made the redemption payment, three to six months before the redemption period expires, the tax purchaser seeking to preserve its rights must file a petition for a tax deed in the circuit court and must give notice of the expiration of the redemption period to anyone with an interest in the property. *Id* at 401. After the redemption period expires, the tax purchaser has one year to obtain and record the tax deed, whereupon the tax purchaser becomes the owner of the property outright and all outstanding liens and mortgages are extinguished. *Id.* The one-year period is tolled by any court order preventing the tax purchaser from applying for a tax deed, such as the automatic stay in a bankruptcy proceeding. *Id.*; *see also* 35 ILCS 200/22-85. The redemption period, however, is not tolled by a bankruptcy proceeding. *LaMont*, 740 F.3d at 410.

Under certain circumstances, instead of seeking a tax deed, a tax purchaser may instead apply to the circuit court for a declaration that the tax sale was a "sale in error." *Id.* at 401. One such circumstance is if the property owner petitioned for bankruptcy after the tax sale and before the county issued a tax deed. Upon a declaration that the tax sale was a sale in error, the tax purchaser is reimbursed by the county for the original purchase plus interest as set by statute. *Id.*; *see also* 35 ILCS 200/21-315.

3

## II. Facts and Proceedings in this Case

Newline purchased the 2016 general real estate taxes for the real property located at 228 Elizabeth Street, Calumet City, Illinois ("the Property") on May 7, 2018, and received a Certificate of Purchase. It subsequently paid the real estate taxes on the Property for 2017 and 2018, and the first installment in 2019.

Thomas filed a voluntary petition for relief under Chapter 13 of the United State Bankruptcy Code on September 15, 2020. Thomas listed an ownership interest in the real property at 228 Elizabeth Street, Calumet City, Illinois ("the Property") on Schedule A of his Bankruptcy Schedules. The Chapter 13 Plan filed concurrently provided for payment of $14,854.62 to Newline as a secured creditor, reflecting the amount identified in Thomas's Chapter 13 Petition for "back property taxes."

Newline filed a proof of claim on September 29, 2020, asserting a secured claim for $16,572.37 in "Sold Real Estate Taxes." It objected to confirmation of the September 15 Plan, asserting that the total value of its secured claim was $16,572.37 and that it was entitled to repayment with 12% interest, citing *In re Villasenor*, 581 B.R. 546 (Bankr. N.D. Ill. 2017). A November 2, 2020 confirmation hearing was continued to December 7, where the parties requested another continuance to January 4, 2021. On the record, the Bankruptcy Judge said she had read Newline's objection and was prepared to overrule it, stating, "I've said many times, the payments belong to the taxing authority." R. 6-2.

Thomas then filed an amended Chapter 13 Plan on December 30, 2020 that treated the claim for back taxes as being payable to the Cook County Treasurer, in

the amount of $24,378.57 at 0% interest. Newline objected to this Plan on similar grounds, reasserting its secured claim for $16,572.37, encompassing real estate taxes through 2018. It also sought Plan provisions directing that future real estate taxes be deposited into an account controlled by a third party such as Newline and directing Thomas to maintain property insurance.

On March 1, 2021, the Bankruptcy Court confirmed the December 30, 2020 Plan. It overruled Newline's various objections in a separate order three days later.[1] In that order, the Bankruptcy Court reasoned that because Thomas (the property owner) and Newline (the tax purchaser) had no direct obligations or rights with respect to one another (whether by law or contract) and had separate relationships with the county, there was no basis by which Newline would be entitled to direct payment from Thomas. Instead, Thomas was obligated to make payments to the county, as the "entity owed the debt." Although the Bankruptcy Court acknowledged that Newline had filed a proof of claim that had not been objected to (and was therefore deemed allowed under 11 U.S.C. § 502(b)), it stated that "due to the confusion over who has a right to receive tax payments in a chapter 13 plan once the taxes have been sold, the court will not allow the claim." It also concluded that

---

[1] Newline contends this Court should not consider the March 4 order of the Bankruptcy Court because it was docketed three days after the confirmation order appealed from here. Because the March 4 order essentially functions as an explanation of the Bankruptcy Court's basis for confirming the December 30 Plan over Newline's objections, the Court is not concerned by its timing. In any event, the Court would be hard pressed to ignore the March 4 order without adding even more confusion to an already bewildering issue on appeal.

Thomas had no duty to Newline to maintain insurance on the real property at issue.[2] *See Gan B, LLC v. Sims*, 575 B.R.

Newline appealed the confirmation order to this Court on March 7, 2021. After Newline filed its opening brief, Thomas's counsel in the underlying bankruptcy proceeding filed a notice of non-participation in the appeal. R. 13. The notice states that "the crux of the appeal centers around who is the correct creditor to be paid inside the Appellee's Chapter 13 plan for past due property taxes." It explains that pursuant to the approved Plan, Thomas is currently paying the past due taxes to the Cook County Treasurer and suggests that if this Court reverses the Bankruptcy Court, there would be no adverse effect on Thomas, merely a change in payee.

## Analysis

The primary issue on appeal is whether the Bankruptcy Court erred in confirming the December 30 Plan over Newline's objections that the Plan failed to provide for payment of the secured claim it asserts as a tax purchaser. The Bankruptcy Court cited the "confusion" over whether Newline had any right to direct payment for the back taxes from Thomas as a reason for disallowing Newline's claim. It apparently relied on a discussion in *LaMont* in which the Seventh Circuit recognized that in the context of the Illinois Uniform Fraudulent Transfer Act, "a tax purchaser has no direct right to payment from the taxpayer, but rather that the

---

[2] Nowhere in its brief does Newline discuss the question of property insurance. The Court therefore assumes it is not challenging the Bankruptcy Court's ruling on this issue.

6

property tax code set up an indirect right to payment mediated by the county." 740 F.3d at 406 (citing *A.P. Props., Inc. v. Goshinsky,* 714 N.E.2d 519, 522 (Ill. 1999)).

*LaMont* goes on, however, to explain that while the tax purchaser does not hold a "right to payment" under the Illinois UFTA, "that does not mean that his interest is not a right to payment within the meaning of the bankruptcy code." *Id.* at 407. The court explained that the term "claim" within the bankruptcy code is broader than the right to payment under the UFTA and includes claims against a debtor's property and an "equitable remedy for breach of performance." *Id.* (citing 11 U.S.C. §§ 102(2), 101(5)(B)). The tax purchaser's right to payment, though indirect, nonetheless constitutes a claim within this definition: "The reason the indirectness of the right to payment between the tax purchaser and the taxpayer is not an issue is because the tax purchaser holds a right to payment from the *property* of the taxpayer." *Id.*; *see also Woodruff*, 600 B.R. at 631 (stating that a tax purchaser has an *in rem* claim against the property of the bankruptcy estate). The tax purchaser's right to seek a tax deed, meanwhile, is the "equitable remedy for breach of performance" that the tax purchaser obtains from the county via the tax sale. *LaMont*, 740 F.3d at 408.

The Bankruptcy Court here focused on the fact that Newline has no right to payment against Thomas personally in disallowing its clams. *See* R. 39, Dkt. 20-17118 (Bankr. N.D. Ill. Mar. 4, 2021) ("Because the tax purchaser and tax payer have separate relationships with the county, there being no direct obligations or rights owing each other by law or contract, the Debtor has to make payments to the county, the entity owed the debt, not the tax purchaser."). While the premise is accurate,

7

*LaMont* and subsequent cases demonstrate that the conclusion does not follow. *See LaMont*, 740 F.3d at 409 ("[T]he tax purchaser holds a claim against the debtors that may be treated in bankruptcy."); *Woodruff*, 600 B.R. at 630-31 (noting that although the tax sale extinguishes the debtor's personal liability for the unpaid taxes, the tax purchaser retains an *in rem* claim against the property of the bankruptcy estate). Newline has a valid claim in bankruptcy that has not been objected to and can be treated by a Chapter 13 plan.

It is not immediately clear from the record when the redemption period on the Property expired, but assuming it lasted 30 months (because the Property is Thomas's home), the outer deadline was after Thomas filed his Chapter 13 petition. It likely does not matter—the record suggests Newline has not obtained a tax deed (something it surely would have made the Bankruptcy Court aware of if so), and "the passing of the redemption period is not a material event as it relates to the [tax purchaser's] rights in question. A debtor whose period for redeeming taxes sold in Illinois has passed prior to commencing his or her case may nonetheless treat those taxes under a chapter 13 plan if a tax deed has not yet issued and recorded." *In re Robinson*, 577 B.R. 294, 299 (Bankr. N.D. Ill. 2017).

For these reasons, the Court finds that it was error to disallow Newline's proof of claim as a secured creditor on the basis of apparent confusion over to whom the delinquent taxes on the Property should be paid. Having purchased those taxes on the Property prior to commencement of Thomas's bankruptcy petition, Newline has a claim that may be treated in the Chapter 13 plan.

8

Although *LaMont* seems to clarify that Newline's claim here may indeed be treated in a Chapter 13 bankruptcy plan as a secured claim, it admittedly does little to clear up the confusion over how the claim should be resolved. The bankruptcy court in that case treated the tax purchaser's secured claim by providing for payment to the taxing authority (the Village of Minooka) in installments over the course of the plan. *LaMont*, 740 F.3d at 409. It was then presumably up to the tax purchaser to seek repayment from the county, as though it was going through the formal redemption process. But the court explicitly stated that the plan was "treating [the tax purchaser's] secured claim, *not* formally redeeming the property." *Id.; see also Robinson*, 577 B.R. at 303 ("The debtor's right to redeem the property is separate from the debtor's right to treat the claim and the property."). The *LaMont* court did not consider whether the plan before it was valid because the tax purchaser had not challenged it but suggested the tax purchaser could seek a sale-in-error if it was not satisfied with the plan's provisions. 740 F.3d at 409. The court also ventured that even if formal redemption through the plan was not an option (whether because the redemption deadline had passed or because the debtor could only make payments in installments, which the county is apparently unable to accept), a plan could devise a system involving direct payment from the debtor to the tax purchaser. *Id.* Other courts have employed this type of direct payment. *See, e.g.*, *In re Thompson*, 2020 WL 728605, at *3 (Bankr. N.D. Ill. Jan. 16, 2020) ("[T]he proper party to be paid the Secured Tax Portion here would be Creditor, the tax purchaser."); *Zajicek v. Burks*, 2014 WL 1612277 (Bankr. N.D. Ill. Apr. 22, 2014) (approving Chapter 13 plan that

9

provided for installment payments to tax purchaser over the life of the plan and noting that a "Chapter 13 plan may modify the rights of holders of such secured claims").

These cases and plans are cited only as examples—this Court offers no opinion on the value of Newline's secured claim or how it should be treated, matters not decided by the Bankruptcy Court below in light of the disallowance of the claim and thus outside the scope of this appeal. Resolution of these questions may require input from Newline, Thomas, and the county, which is apparently currently receiving payments for back taxes. This Court has not had the benefit of hearing from anyone other than Newline in this appeal and is in no position to wade further into the "much-beleaguered Illinois tax purchase system" without additional guidance. *Robinson*, 577 B.R. at 299.

## Conclusion

For the foregoing reasons, the Bankruptcy Court order approving the December 30, 2021 Chapter 13 Plan is reversed and the matter is remanded for further consideration in accordance with this order.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: April 21, 2022